UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND BLAIR on behalf of G.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | No. 2:15CV00056 AGF |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that G.B. ("Plaintiff" herein), a minor, was not disabled, as defined by the Social Security Act, and was thus not entitled to Child's Supplemental Security Income ("SSI"). For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further consideration.

## BACKGROUND

On August 6, 2012, Plaintiff's father filed an application for Child's SSI on behalf of Plaintiff, who was born on November 6, 2001. Disability was claimed based on learning disability, attention deficit hyperactivity disorder ("ADHD") ("can't concentrate during school or at home, unable to stay on task"), depression, and impulse control issues. (Tr. 160.) After the application was denied at the initial administrative level, Plaintiff requested an evidentiary hearing before an administrative law judge ("ALJ"), and on

January 7, 2014, such a hearing was held, at which Plaintiff (then 12 years old and in fifth grade) and his father testified. On February 27, 2014, the ALJ issued her decision finding that Plaintiff was not disabled under the Social Security Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on June 9, 2015. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision that Plaintiff did not have a marked limitation in his ability to attend and complete tasks is not supported by substantial evidence in the record. Plaintiff asks that the decision of the Commissioner be reversed and the case remanded for further consideration.

**School and Medical Records, and Evidentiary Hearing**

The Court adopts Plaintiff's unopposed recitation of the facts of this case, as set forth on pages 1 to 6 of his brief (Doc. No. 14) along with Defendant's Statement of Additional Material Facts (Doc. No. 15-2), as amended by Plaintiff (Doc. No. 19). Together, these facts present a fair and accurate summary of the record, including the testimony at the evidentiary hearing. The Court will discuss specific facts as they are relevant to the parties' arguments.

**ALJ's Decision**

The ALJ found that Plaintiff had the severe impairments of ADHD; major depressive disorder; anxiety disorder, not otherwise specified; and learning disorder, not otherwise specified. The ALJ then found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled a deemed-disabling impairment listed in the Commissioner's regulations at 20 C.F.R. part 404, subpart P, Appendix 1 ("Appendix 1"). Next, the ALJ considered whether Plaintiff had an impairment or combination of impairments that functionally equaled the severity of a listed impairment. As discussed below, a child with a "marked" limitation in two of six domains of functioning[1] will be found to have an impairment that functionally equals a listed impairment, and to be entitled to disability benefits. 20 C.F.R. § 416.926a(d). The ALJ determined that Plaintiff had a marked limitation in the domain of acquiring and using information, but less than a marked limitation in the other five domains, including attending and completing tasks. Consequently, the ALJ found that Plaintiff was not disabled.

In reaching these findings, the ALJ stated that she afforded "great weight" to the Teacher Questionnaire "taken as a whole," completed on October 24, 2012, by Plaintiff's third grade teacher, Kendra Haun. In the section on "Attending and Completing Tasks," the Questionnaire lists 13 activities, with the option of rating each activity as presenting "no problem," "a light problem," "an obvious problem," "a serious problem," or "a very serious problem." Ms. Haun indicated that Plaintiff had an obvious problem in three of the activities (focusing long enough to finish an assigned activity or task, refocusing to task

---

1     The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

when necessary, and completing work accurately without careless mistakes); a serious problem in one of the activities (completing class/homework assignments); a slight problem in three activities (including carrying out multi-step instructions); and no problem in the remaining six activities (including sustaining attention during play/sports activity). (Tr. 216.)

The ALJ gave "partial weight" to the October 2, 2012 opinion of non-examining state agency psychological consultant Elissa Lewis, Ph.D., who opined that Plaintiff had less than marked limitations in each of the six domains of functioning (Tr. 80-85); and "partial weight" to the September 7, 2012 report prepared by a non-treating psychiatrist Charles Doyle, Ph.D., who examined Plaintiff and diagnosed a Global Assessment of Functioning score ("GAF") of 50, which indicates a "serious" impairment in social, occupational, or school functioning. The ALJ accepted each of these two opinions only to the extent that they were consistent with her finding of a marked limitation in acquiring and using information, and less than a marked limitation in the other domains.

Similarly, the ALJ credited the Individual Functional Assessments ("IFA") prepared by special education manager Tanya Grant on November 17, 2013 (Tr. 323), and by Plaintiff's fourth grade teacher Karen Waller on November 20, 2013 (Tr. 328) only to the extent that they indicated (by checks) a marked limitation in acquiring and using information. The ALJ discredited these same educators' conclusions that Plaintiff also had a marked limitation in attending and completing tasks. The ALJ stated, without elaboration, that Plaintiff's Individualized Educational Plan ("IEP") showed a lesser

4

degree of limitation in this domain.  The IEP in the record was instituted for the 2011-2012 school year, when Plaintiff was in third grade.  For the Fall reporting period of that year, the IEP shows a score of 2 on a scale of 1 to 4, with 1 indicating the lowest performance, for "completes work on time" and "follows directions"; and a score of 1for "produces quality work," and "uses organizational skills."  (Tr. 235.)  The record does not indicate subsequent improvements of these scores.

     The ALJ also stated, without elaboration, that Grant's and Waller's comments on the IFAs with respect to attending and completing tasks were not consistent with the criteria for a marked degree of limitation, and "with the evidence of record."  Waller's comment was: "Staying focused is hard at times."  (Tr. 328.)  Grant's comment was: "[Plaintiff] loses focus in the general classroom due to inability to read for himself.  He is easily distracted by his own thoughts, objects in desk, or his peers around him.  At times he is defiant when asked to follow along in reading or attempt to read even in small group."  (Tr. 323.)

     The ALJ explained her finding that Plaintiff had a less than marked limitation in attending and completing tasks, by stating that Plaintiff's ability in this domain improved with Adderall (used to treat ADHD), and that Plaintiff was able to focus "on areas of interest," with the one example provided by the ALJ being that Plaintiff was able to use the internet in order to watch car videos, a subject of interest to him, which the ALJ believed was established by Plaintiff's hearing testimony.

5

Having found that Plaintiff did not have a marked limitation in more than one domain of functioning, the ALJ found that Plaintiff was not disabled.

**<u>Arguments of the Parties</u>**

Plaintiff argues that in finding that he did not have a marked limitation in attending and completing tasks, the ALJ (1) improperly rejected the opinions in Haun's Teacher Questionnaire and the IFAs of Grant and Waller on this domain, especially as the ALJ credited (and in Haun's case, giving great weight to) their opinions with respect to the other domains; and (2) improperly ignored the December 2012 assessment, based on classroom observation, of certified school psychologist Kelly Heiskell, Ed. S., that Plaintiff spent less time on-task than his peers (60% or 70% as compared to about 90%) (Tr. at 370). In addition, Plaintiff argues that the hearing testimony, in fact, did not suggest that Plaintiff was able to focus on video games. Rather, Plaintiff points out that his father specifically testified that Plaintiff liked to play video games, but that he was unable to play for more than a short period of time, before leaving to do something else. (Tr. at 61.) And Plaintiff himself testified that he only played video games about twice a week, with no mention of duration. (Tr. 51.)

Plaintiff faults the ALJ for according weight to Dr. Lewis's opinion of no marked limitation in the domain at issue, because Dr. Lewis, who relied entirely on the written record, formed her opinion prior to the educators' opinions described above finding marked limitation in this domain.

Defendant argues that Haun's assessment of a slight problem in three out of 13

6

relevant activities, an obvious problem in three, a serious problem in one, and no problem in six, is not inconsistent with ALJ's finding that claimant had less than a marked limitation in attending and completing tasks. Defendant maintains that Dr. Lewis's opinion of no limitation in this domain was appropriately given some weight, despite the fact that it was formed before other evidence came into the record, because it is always the case when a child's disability application is involved that new evidence is introduced.

In addition, according to Defendant, the ALJ appropriately found Waller's and Grant's opinions that Plaintiff had a marked limitation in attending and completing tasks not reliable because the opinions were on checkbox forms, and the only support Waller offered for her opinion was that staying focused is hard for Plaintiff at times. Defendant points to the scores of 61 and 57 as rated by Haun and a special education teacher, respectively, in "attention problems" on a Behavioral Assessment System for Children 2nd ("BASC-2") conducted on November 12, 2012; the form indicates an average score of 50 and a standard deviation of ten. (Tr. 371.) Defendant argues that Plaintiff's limitation in attention was not "marked" under the regulatory definition, which defines "marked" as the equivalent of functioning suggested by standardized testing scores that are at least two standard deviations below the mean.

Defendant also points to the following evidence in the record, relevant to Plaintiff's ability in attending and completing tasks: On January 9, 2013, Plaintiff's father told Julia Knapp, F.N.P., that Plaintiff's grades began to improve after he started taking medication for depression and ADHD. (Tr. 398.) On February 8, 2013, Plaintiff's parents told Lisa

7

M. Mayes, D.O., that Plaintiff was "doing very well" on his current medication regimen that included Adderall. (Tr. 396.) On April 5, 2013, Plaintiff's parents indicated that he was doing well on Adderall and "overall doing well in school" (although he continued to have anger outbursts). (Tr. 394.) On June 24, 2013, Plaintiff's mother reported an increase in symptoms, stating that they had stopped giving Plaintiff his medication for the summer; Dr. Mayes instructed Plaintiff's parents to restart his medication (Tr. 392-93.) On August 21, 2013, Plaintiff's father reported that he had again stopped giving Plaintiff all of his medications due to reported headaches; Dr. Mayes told Plaintiff's parents that if his impulsiveness returned, they could explore alternative medications. (Tr. 390-91.) On October 22, 2013, Plaintiff was again taking no medication and was no longer seeing a therapist, and his mother reported some behavior problems at home and school. (Tr. 388.)

## DISCUSSION

### Standard of Review

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent

positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**Statutory and Regulatory Framework for Child's SSI**

For a child under the age of 18 to be considered disabled and eligible for Child's SSI under the Social Security Act, he must have a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner's regulations set out a three-step sequential evaluation process to determine whether a child's impairment or combination of impairments is disabling. The Commissioner begins by deciding whether the child is engaged in substantial gainful activity. If so, benefits are denied. If not, at step two, the child's impairment is evaluated to determine whether it is severe. If the child's impairment is not severe, there is no disability. If the impairment is severe, at step three the ALJ compares the impairment to the childhood listings in Appendix 1. If the child's impairment meets, medically equals, or functionally equals a listed impairment, the child is disabled. 20 C.F.R. § 416.924; *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 856 (8th Cir. 2003).

A child's impairment functionally equals a listed impairment if there is an

9

"extreme" limitation in one of the six functional domains noted above, or a "marked" limitation in at least two of the domains. 20 C.F.R. § 416.926a(b)(1); *Hudson ex. rel Jones v. Barnhart*, 345 F.3d 661, 665 (8th Cir. 2003). A "marked" limitation is one that "interferes seriously" with the child's ability to independently initiate, sustain, or complete domain-related activities 20 C.F.R. § 416.926a(e)(2)(i). Not every activity in a domain must be markedly limited in order for the child's functioning in the domain as a whole to be considered so. *Id*. A "marked" limitation can also be defined as "the equivalent of the functioning" expected to be found "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[2] *Id*.

In the only domain at issue in this case—attending and completing tasks—the ALJ is to consider how well a child is able to focus and maintain attention, and how well he begins, carries through, and finishes activities, including the pace of performance. *Id*. § 416.926a(h). A school-age child, like Plaintiff, should be able to focus attention to follow directions, complete assignments, concentrate on details, change activities or routine, stay on task, participate in group sports, read alone, and complete family chores. *Id*. § 416.926a(h)(2)(iv). Examples of difficulty in this domain include being easily startled or distracted, being slow to focus on or failing to complete activities of interest, repeatedly becoming side tracked from activities, being easily frustrated and giving up on tasks, requiring extra supervision to remain engaged, or being unable to complete

---

2   Scores that are three or more standard deviations below the mean indicate an "extreme" limitation. *Id*. § 416.926a(e)(3)(i).

assignments. *Id.* § 416.926a(h)(3).

**ALJ's Findings on Functional Equivalence**

The Commissioner's regulations for childhood disabilities provide that parents and teachers, as well as medical providers, are important sources of information. *Id.* § 416.924a; *Richardson ex rel. Richardson v. Massanari*, No. C00-2083 MJM, 2001 WL 34152093, *10 (N.D. Iowa Sept. 27, 2001) (explaining that under the regulations, "the observations and opinions of a child's teachers are particularly informative at [the functional equivalence] step due to the teachers' regular, ongoing interaction with, and observation of, the child over a sustained period of time").

Several aspects of the ALJ's decision are problematic. The Court fails to see how the comments by Plaintiff's teachers Grant and Waller were "not consistent with the criteria for a marked degree of limitation" in the domain at issue. *See, e.g., Mayo ex rel. D.L. v. Astrue*, 2012 WL 996580 *14 (E.D. Mo. Mar. 22, 2012) (finding that a marked limitation in attending and completing tasks was supported by a teacher's statement that the plaintiff had a short attention span, was easily distracted, had difficulty working independently, and performed work in a careless manner). Nor does the Court discern how the IEP conflicts with these two teachers' assessments. The Court is troubled by the ALJ crediting the teachers' opinions only to the extent the opinions comported with the ALJ's conclusions. Moreover, the hearing testimony does not support the ALJ's finding that Plaintiff was able to focus on video games.

Dr. Lewis's opinion cannot be said to constitute substantial evidence supporting

the ALJ's conclusion that Plaintiff did not have a marked limitation in attending and completing tasks, as the opinion was based only on a review of the written record, which at that time did not include Grant's and Waller's assessments of a marked limitation in this domain. Nor does the Court believe that the two isolated BASC-2 scores noted above can be said to be substantial evidence supporting the ALJ's decision. "Standardized tests" are those administered by a psychologist, psychiatrist, pediatrician, or other physician specialist qualified by training and experience to perform such an evaluation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00D. The scores Defendant points to were provided by teachers. Furthermore, the regulations provide that such scores are not dispositive and are to be considered together with the other information about the minor's functioning, including reports of classroom performance and observations of school personnel and others. *Id*. § 416.926a(e)(4)(i & ii).

The evidence noted by Defendant that on intermittent days, Plaintiff's parents reported that he was "doing well" does not change the Court's evaluation of the ALJ's decision. *See, e.g., Oliver v. Barnhart*, No. 105CV358JDT-TAB, 2006 WL 3207864, at *10 (S.D. Ind. Sept. 15, 2006) (reversing and remanding for further consideration the ALJ's decision that a child claimant with ADHD did not have marked limitation in any domain, despite reports that the child was "doing well" on intermittent dates); *Ladd ex rel. J.J.L.G. v. Colvin*, No. CIV.A. 13-00088-B, 2014 WL 1230255, at *10 (S.D. Ala. Mar. 25, 2014) (same). On the other hand, it is also troubling that Plaintiff's parents elected to discontinue his medication, and it is unclear from this record the degree to which

12

medication improved Plaintiff's ability to attend and complete tasks.

In sum, the Court does not believe that the ALJ's decision that Plaintiff did not have a marked limitation in attending and completing tasks is supported by substantial evidence in the record.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED and the case is REMANDED** for further consideration by the ALJ.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2016.